UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINH XUAN NGUYEN,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Respondent. | Case No. 8:25-cv-02654-HDV-DSR<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION [13]** |

1

## I. INTRODUCTION

Petitioner Minh Xuan Nguyen entered the United States in 1989, at fourteen years old. In 1998, after serving a criminal sentence for a crime he committed as a teenager, he was ordered removed to Vietnam. Because he was not immediately removable, he was released on an order of supervision a year later. In the over 25 years since, he has regularly checked in with ICE, complied with his conditions of release, and committed no crimes.

When he appeared for a regularly scheduled ICE appointment in October 2025, Petitioner was detained. He has been in custody at the Adelanto Detention Facility ever since. This habeas petition followed. Before the Court is Petitioner's Application for Preliminary Injunction ("Motion"). [Dkt. 13]. The Motion is fully briefed and the Court heard oral argument on it on December 17. *See* Opposition [Dkt. 14]; Reply [Dkt. 15]; Hearing [Dkt. 16].

The Court finds that Petitioner has shown a likelihood of success on the merits of his claims. The record is devoid of any meaningful evidence of "changed circumstances" that would allow Petitioner's removal to Vietnam in the "reasonably foreseeable future" as required under 8 C.F.R. § 241.13(i)(1). Moreover, the government does not (and cannot) seriously dispute that it failed to comply with the mandatory procedural requirements for revocation of Petitioner's release. The Court further concludes that Petitioner is suffering irreparable harm in detention, and that the balance of equities and public interest tips sharply in his favor.

The Motion is granted. Respondents are ordered to release Petitioner ***forthwith***.

## II. BACKGROUND

### A. Factual Background

Petitioner Minh Xuan Nguyen is a native and citizen of Vietnam. Petition for Writ of Habeas Corpus ("Petition") [Dkt. 2] at 1;[1] Declaration of Lourdes Palacios ("Palacios Decl.") ¶ 4. In 1988,

---

[1] The Petition is verified by Petitioner's counsel, who has declared, under penalty of perjury, that its contents "are true and correct to the best of [her] knowledge and belief." Petition at 31. Counsel indicated at the hearing that this verification was based on conversations she had with Petitioner, with whom it was difficult to have actual, in-person meetings in detention. Hearing. The Court thus accepts the Petition as evidence at this stage. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less

2

1 when he was thirteen, his older sister sponsored him and his parents to come to Canada through a
2 family reunification program.  Declaration of Le Xuan Nguyen in Support of Motion ("Le Decl.")
3 ¶ 2.  In 1989, he entered the United States on a nonimmigrant visitor's visa.  *Id.* ¶ 6.

4       In the early 1990s, while still a teenager, Petitioner sustained multiple convictions (first
5 degree robbery of an inhabited dwelling, assault with a deadly weapon, false imprisonment, assault
6 with firearm on person, and receipt of stolen property) relating to an armed burglary.  Petition at 3;
7 Palacios Decl. ¶ 6.  On February 18, 1998, he was accordingly ordered removed to Canada or to
8 Vietnam.  Petition at 3; Palacios Decl. ¶ 7.  After that, he was detained for over a year in
9 immigration custody.  Petition at 3.  He was released on an order of supervision on March 25, 1999.
10 *Id.*

11       In the past two-and-a-half decades, Petitioner has built a life in the United States.  He has a
12 wife and two children, all of whom are U.S. citizens.  *Id.* at 3.  They describe him as a "loving,
13 responsible, and devoted family man," and he provides them significant physical, practical,
14 financial, and emotional support.  Letters of Support [Dkt. 13-3] at 2 ("Lien Letter") (Petitioner's
15 wife explaining that he performs many daily responsibilities that her severe spinal stenosis prevents
16 her from doing, almost single-handedly raised their now 23-year-old daughter, and is the primary
17 caregiver for their 10-year-old son); *id.* at 3 ("Trinity Letter") (Petitioner's daughter); *id.* at 4 ("Lu
18 Letter") (Petitioner's nephew).  He has worked as a subpoena records entry clerk for over a decade.
19 Petition at 3–4; *see also* Supplemental Letters of Support [Dkt. 15-1] (letters from coworkers and
20 supervisors describing him as a "valued employee" with an "exceptional work ethic").  He has not
21 been to Vietnam or to Canada since he arrived in the United States.  Le Decl. ¶ 7; Letters of Support
22 at 6 ("Pham Letter").  Since being released on his order of supervision, he has regularly checked in
23 with ICE and not committed any crimes or violations of his conditions of release.  Petition at 3–4;
24 *see also generally* Palacios Decl.

25       On October 21, 2025, when Petitioner went to a regularly scheduled ICE check-in, his
26 release was revoked and he was detained.  Petition at 4; Palacios Decl. ¶ 9.  Nguyen asserts that he

27 ―――――――――――――――

28 formal and evidence that is less complete than in a trial on the merits.")

1  "has not had any formal meetings with a deportation officer," was not given "any formal paperwork
2  explaining specific reasons why he was re-detained or identifying changed circumstances that make
3  his removal more likely," and was given no "opportunity to tell ICE why he should not be re-
4  detained." Petition at 4; *see also id.* at 19. The government notes that Petitioner "was served with a
5  Notice of Revocation of Release," but does not respond to Petitioner's allegations regarding the lack
6  of an interview or opportunity to be heard, submitting no evidence that any such interview occurred.
7  Palacios Decl. ¶ 10, Ex. A ("Notice of Revocation"); *see generally* Opposition.

8  Petitioner is currently detained at Adelanto Detention Center. Petition at 2.

9  **B.   Procedural Background**

10  On November 26, 2025, Nguyen filed the present Petition.[2] That same day, he filed an
11  application for a temporary restraining order, which was fully briefed. *See* [Dkts. 3, 7, 10]. Finding
12  that Petitioner had raised substantial questions on the merits, the Court enjoined Respondents from
13  from transferring, relocating, or removing Petitioner outside of the Central District of California, and
14  set an expedited briefing schedule on a preliminary injunction. Order re TRO and Briefing Schedule
15  [Dkt. 11]. The Court then heard oral argument and took the Motion for preliminary injunction under
16  submission on December 17. [Dkt. 16].

17  **III.   LEGAL STANDARD**

18  To be entitled to a preliminary injunction, the movant must establish that (1) he is likely to
19  succeed on the merits, (2) he is likely to suffer irreparable harm absent the preliminary injunction,
20  (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest.
21  *Winter v. Nat. Ress. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th
22  514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third and fourth
23  factors . . . merge." *Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th

---

[2] Through his Petition, Nguyen alleges that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because there is no reason to believe there is a significant likelihood of removal in the reasonably foreseeable future; that the revocation of his release and re-detention did not comply with due process or the relevant regulation, 8 C.F.R. § 241.13(i); and that any attempt to remove him to a third country would violate due process for insufficient notice and would be impermissibly punitive. Petition at 10–22.

664, 695 (9th Cir. 2023) (en banc).  In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id*. at 684 (citation omitted).  "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id*. (citation omitted).

## IV.    DISCUSSION

### A.    Likelihood of Success

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a).  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).  A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension.  8 U.S.C. § 1231(a)(1).  However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).  The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." *Id*. § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a).  Section 241.4, titled "Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period," sets "out procedures DHS must follow to impose continued detention." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).  Section 241.13, titled "Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future," implements the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Guzman Chavez*, 594 U.S. at 529.  In *Zadvydas*, the Supreme Court held that a noncitizen may be detained only for a period "reasonably necessary" to bring about their removal from the United States—presumptively six months.  533 U.S. at 689, 701.  After that point, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release them. *Id.* at 701.

Both sections 241.4 and 241.13 also contain provisions governing the *revocation* of release and establish certain required process for that revocation. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).  Upon

5

revocation of release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).  If they continue to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "ordinarily [] expected to occur within approximately three months after release is revoked." 8 C.F.R. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the alien's continued detention pending removal.").  "In simpler terms, in order to revoke release, the government must notify the noncitizen of the ***reason*** for the revocation and give them both an ***informal and formal interview***." *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

### 1.     Reasons for Revocation

Section 241.4 governs the detention of noncitizens under a final order of removal unless the government has made the specific determination that there is no significant likelihood of removal in the reasonably foreseeable future, in which case section 241.13 governs.  8 C.F.R. § 241.13(b)(1) ("Relationship to § 241.4").  Nguyen was first released on supervision in 1999.  At that time, Vietnam was refusing to repatriate Vietnamese immigrants ordered removed from the United States. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020); Hearing.  The government likely determined that there was no significant likelihood that Petitioner would be removed in the reasonably foreseeable future.  Hearing.  Section 241.13 thus likely governs his release and revocation.  *See Quan v. Bowen*, No. 5:25-cv-02546-HDV-PVC (C.D. Cal. Nov. 14, 2025) [Dkt. 14] ("*Quan* PI") at 6–7.

Under that section, release can be revoked if a noncitizen violates the conditions or "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1),

(2).[3]  Here, there is no allegation that Nguyen violated any of his conditions of release.  *See* Petition at 1, 4; *see generally* Opposition; Palacios Decl.  And Petitioner is likely to succeed on his claim that the government cannot demonstrate that, "on account of changed circumstances," there is now a "significant likelihood" that he will be removed to Vietnam or to Canada "in the reasonably foreseeable future."  *See* Motion at 3–6.

      As to the likelihood of removal to *Vietnam*, Petitioner argues it is not reasonably foreseeable because, as a pre-1995 immigrant, it is unlikely Vietnam will accept his repatriation and issue travel documents for him.  *Id.* at 3–4.  Under the most recent diplomatic agreement between the United States and Vietnam—a November 2020 Memorandum of Understanding—Vietnam began to accept some pre-1995 arrivals, but on a discretionary, case-by-case basis.  *See* Petition at 5; 2020 Memorandum of Understanding between the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam (November 21, 2020), available at https://cdn.craft.cloud/5cd1c590-65ba-4ad2-a52c-b55e67f8f04b/ assets/media/ ALC-FOIA-Re-Release-MOU-bates-1-8-8-10-21.pdf ("2020 MOU") at 1–3; *see also Quan* PI at 7–9; *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025).  Reports produced in connection with the *Trinh* litigation show that between September 2021 and September 2023, the government requested travel documents for sixteen pre-1995 Vietnamese nationals, and only received them for and managed to deport four.  Petition at 6; *Resources on Deportation of Vietnamese Immigrants Who Entered the U.S. Before 1995*, Asian Law Caucus (July 15, 2025), https://www.asianlawcaucus.org/ news-resources/guides-reports/trinh-reports ("*Trinh* Reports").  Nguyen notes that the government was unable to remove him in 1998 and 1999, and for the over 25 years since, five of which post-date the 2020 MOU.  Petition at 3; Motion at 3, 5; Reply at 3.  And though the government has now requested his travel documents, they did so one month after detaining him, and the request has been

---

[3] The Court finds that this regulation governing revocation of supervised release places the burden on the government to establish changed circumstances rendering "reasonably foreseeable" removal "significant[ly] likel[y]."  The Court thus need not reach Petitioner's argument that the government bears that same burden for a different reason: because he has been detained longer than the six months—counting the time he was detained in the nineties before he was released on supervision—identified as presumptively reasonable in *Zadvydas*.  *See* Petition at 11–13.

7

1  pending for almost another month with no acknowledgment or sign of progress. *See* Palacios Decl.
2  ¶ 11 (request to Vietnam sent November 20, 2025); *see generally* Opposition; *see also* 2020 MOU
3  § 8(3), (4) (explaining that Vietnam intends to issue travel documents for eligible individuals or
4  notify DHS that individuals are not eligible within "thirty (30) calendar days from the receiving date
5  of a request").

6  The government argues that facts on the ground have changed recently, such that "[p]re-1995
7  Vietnamese immigrants are now routinely removed to Vietnam," Opposition re Application for
8  Temporary Restraining Order ("TRO Opposition") [Dkt. 7] at 5–6, citing three habeas cases in this
9  district that were mooted by the removal of the Vietnamese petitioners, *Huynh v. Semaia*, No. 2:24-
10 cv-10901-MRA-DFM (C.D. Cal.); *Minh v. DHS*, No. 5:25-cv-02245-HDV-JDE (C.D. Cal.); and *Vo
11 v. DHS*, No. 5:25-cv-02791-SVW-MBK (C.D. Cal.). But beyond this *anecdotal* evidence, the
12 government provides no *statistics* regarding how often it is requesting and receiving travel
13 documents from Vietnam, and no information about whether the people for whom it is receiving
14 those documents are relevantly similar to Nguyen. *See generally* Opposition; Palacios Decl.;
15 Hearing.

16 This is insufficient. The 2020 MOU—which gives Vietnam total discretion whether to
17 accept particular non-citizens, and has now been in effect for five years—is not by itself sufficient to
18 show a changed circumstance or a significant likelihood of removal. *See Quan* PI at 9; *Hoac v.
19 Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Nguyen*,
20 788 F. Supp. 3d at 151. And Respondents' reliance on three instances of individuals being
21 repatriated to Vietnam is "hardly persuasive" to demonstrate changed circumstances, especially
22 without more information on whether those individuals are similar to Petitioner. *Luu v. Bowen*,
23 No. 5:25-cv-03145-MEMF-SP (C.D. Cal. Dec. 11, 2025) [Dkt. 16] at 10–11; *Quan* PI at 9. The
24 record in this case is devoid of concrete information about the criteria that make a particular person
25 eligible for repatriation and that guide Vietnam's exercise of discretion, which are redacted from the
26 publicly-available version of the MOU. *See* 2020 MOU §§ 4, 6. It is also devoid of facts regarding
27 the circumstances of the petitioners in *Huynh*, *Minh*, and *Vo*—and though the Court's own review of
28

1   the dockets in those cases suggest that at least two of the three are pre-1995 arrivals, very little other
2   information is available.
3         Petitioner is thus likely to succeed on the merits of his claim that the government has not
4   established changed circumstances such that he will be removed to Vietnam in the reasonably
5   foreseeable future. *See Quan* PI at 9; *Hoac*, 2025 WL 1993771, at *5 (involving a Vietnamese
6   national who entered the U.S. as a child pre-1995, but was ordered removed in 2023 after being
7   convicted of and serving sentence for murder); *Hoang v. Santa Cruz*, No. 5:25-cv-02766-JGB-JCx
8   (C.D. Cal. Oct. 28, 2025) [Dkt. 10] at 5 ("[T]he Court agrees with Petitioner"—also a Vietnamese
9   national, who entered the U.S. as a child pre-1995, was subsequently ordered removed, and had been
10  released on an order of supervision since 2001—"that the government has not established that it is
11  any more likely to acquire those travel documents than it has since it issued Petitioner's removal
12  order in 2000.").
13        As to the possibility of Petitioner's removal to Canada, the government asserts only (and
14  without documentary support) that Nguyen "was granted permanent resident status in Canada" in
15  1987, that he was ordered "removed to Canada and to Vietnam in the alternative" in 1998, and that
16  "ICE prepared a travel document request to Canada" on or about November 25, 2025. Palacios
17  Decl. ¶¶ 5, 7, 12.
18        In response, Petitioner has submitted a declaration from his older sister—who sponsored his
19  and his parents' entry into Canada while she was a permanent resident there in 1987, helped to
20  coordinate their entry into the United States, and is now a Canadian citizen—together with certain
21  immigration documents from that time. Le Decl. Petitioner's sister explains that the visa on which
22  Petitioner entered Canada expired on July 22, 1988. *Id.* ¶ 3; *id.* at 7. She further explains that a
23  1988 request for Canadian travel documents was denied. *Id.* ¶ 4–5; *id.* at 8–9. And she avers that
24  Petitioner has not returned to Canada since arriving in the United States and has not become a
25  Canadian permanent resident. *Id.* ¶ 7. The Canadian government's guidance regarding permanent
26  residency indicates that "[t]o keep your PR status, you must have been in Canada for at least 730
27  days during the last five years." *See Understand Permanent Resident Status*, Government of Canada
28  (last visited Dec. 18, 2025), https://www.canada.ca/en/immigration-refugees-citizenship/services/

9

permanent-residents/status.html. Petitioner also notes that the government has not been successful in removing him to Canada in the last 25 years—even in the absence of any diplomatic tension between the United States and Canada.

Despite this Court's order to do so, the government's preliminary injunction briefing does not respond to any of Petitioner's points on the likelihood of his removal to Canada. *See* Order re TRO and Briefing Schedule; *see generally* Opposition. The government has thus conceded—and in any case the Court finds—that his reasonably foreseeable removal to Canada is not significantly likely. It does not appear that Petitioner has any status in Canada to even suggest that Canada would accept his removal. Indeed, the government has had 25 years to effectuate Petitioner's removal to Canada, obviously without success. And, although Petitioner has now been detained almost two months, the government has not even submitted evidence that it sent a request for travel documents to Canada, only that it has "prepared" one. "Respondents['] inten[t] to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." *Hoac*, 2025 WL 1993771, at *4.

Petitioner is thus likely to succeed on the merits of this claim.

### 2. Process of Revocation

In the alternative, even if there are changed circumstances rendering Petitioner's "reasonably foreseeable" removal "significant[ly] likel[y]," the Court also finds that Petitioner has demonstrated a likelihood of success on his claim that the government did not comply with the process laid out in 8 C.F.R. § 241.13(i)(2), (3).

First, Petitioner was never notified of the reasons for revocation of his release. Nguyen asserts that he was not given notice "prior to re-detention" that "his Order of Supervision was revoked" nor given "any formal paperwork explaining specific reasons why he was re-detained or identifying changed circumstances that make his removal more likely." Petition at 4, 19. The "Notice of Revocation of Release" that the government served him—*after* they re-detained him—states only that the decision was "made based on a review of your official alien file and a determination that there are changed circumstances in your case," as "ICE has determined" "you can be removed," "it is appropriate to enforce the removal order," and "there is a significant likelihood

1  of removal in the reasonably foreseeable future." Notice of Revocation (served on Petitioner at the
2  Santa Ana Federal Building). Courts in this district, circuit, and across the country have held that
3  such a vague, generic statement is insufficient notice. *See Sarail A. v. Bondi*, No. 25-cv-2144-ECT-
4  JFD, 2025 WL 2533673, at *2, 10 (D. Minn. Sept. 3, 2025) (finding notice that decision was made
5  "based on a review of your file . . . on account of changed circumstances in your case" because "ICE
6  has determined that there is a significant likelihood of removal in the reasonably foreseeable future
7  in your case" to be "not enough," because "Petitioner must be told *what* circumstances had changed
8  or *why* there was now a significant likelihood of removal in order to meaningfully respond"); *Yang*
9  *v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025)
10 (finding "completely conclusory statement" that revocation was "based on a review of your file . . .
11 on account of changed circumstances in your case" "fail[ed] to reflect consideration of any of the
12 required factors under 8 C.F.R. § 241.13(f)"); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL
13 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025) (finding notice that decision was "based on a review
14 of your case; your existing order of removal; and a determination that there is a significant likelihood
15 of your removal in the reasonably foreseeable future" "defective"); *Esmail v. Noem*, 2:25-cv-08325-
16 WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025) (similar); *Bui v. Warden of Otay*
17 *Mesa Detention Facility*, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23,
18 2025) (similar).
19      Second, there is no evidence that Nguyen has been afforded either an informal or formal
20 interview. Nguyen asserts that he has not had an "informal interview," "has not had any formal
21 meetings with a deportation officer," and has been given no "opportunity to tell ICE why he should
22 not be re-detained." Petition at 4, 19. The government submits *no* evidence that either of these
23 interviews have occurred. Indeed, at the hearing on this matter, counsel for Respondents stated that
24 she did not have information that the interview took place.
25      These failures by the government are in clear violation of the requirements of 8 C.F.R.
26 § 241.13(i)(3). A growing number of courts—including this one—have found that the government's
27 failure to follow its release revocation procedures renders the re-detention unlawful and requires
28 release. *See Quan* PI at 11; *Delkash*, 2025 WL 2683988, at *5–6 (collecting cases). And to the

11

extent another layer of analysis is required, the Court again would follow its sister courts in finding that the failure to follow these procedural requirements violates the due process clause. *See Hoang*, No. 5:25-cv-02766-JGB-JCx (C.D. Cal. Oct. 28, 2025) [Dkt. 10] at 3–6; *Bui*, 2025 WL 2988356, at *2–5 (S.D. Cal. Oct. 23, 2025).[4]

### B. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* at 995. Petitioner's family has articulated the support that he normally provides them and the distress that they are suffering in his absence. *See* Lien Letter (Petitioner's wife explaining that he performs many daily responsibilities that her severe spinal stenosis prevents her from doing, almost single-handedly raised their now 23-year-old daughter, and is the primary caregiver for their 10-year-old son); Trinity Letter (Petitioner's daughter); Lu Letter (Petitioner's nephew).

Accordingly, this factor weighs in favor of granting the Motion.

### C. Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship*

---

[4] Petitioner also argues that he is likely to succeed on the merits of his claims regarding third-country removals. Motion at 8; Petition at 20–22. But the government appears intent on effectuating his removal to either Vietnam or Canada. *See* Palacios Decl. ¶¶ 7, 11–12; TRO Opposition at 9–10. Thus, the Court cannot—and need not, in order to grant release—find that the government has yet violated his rights in this regard. The Court cautions, however, that the government is required to follow its laws and regulations for removing noncitizens to third countries, in addition to its rules regarding re-detention. *See* 8 U.S.C. § 1231(b); 8 C.F.R. § 241.15.

*of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public have a significant interest in "enforcement of the United States's immigration laws," Opposition at 2, but that includes an interest in "upholding procedural protections against unlawful detention," *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *7 (N.D. Cal. July 24, 2025) (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct.").

## V.    CONCLUSION

For the reasons stated herein, Petitioner's Motion is granted. Respondents are hereby ordered to immediately release Petitioner from their custody and reinstate and maintain his prior order of supervision.[5]

The parties are further ordered to file, within ten days of this order, a joint report regarding the status of compliance with this order.

Dated: December 19, 2025

Hernán D. Vera
United States District Judge

---

[5] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).